IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE FLOWERS-WILLIAMS | : | **CIVIL ACTION NO.:** 19-3216 |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF ALLENTOWN - | : | |
| ALLENTOWN POLICE | : | |
| DEPARTMENT | : | Honorable Jeffrey L. Schmehl |
| *Defendant.* | : | **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**I.    PRELIMINARY STATEMENT:**

1.    This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff, Maurice Flowers-Williams ("Plaintiff"), a former employee of Defendant, City of Allentown ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2.    This action arises under Title VII of the Human Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 et seq., and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §12101, et seq.

**II.    JURISDICTION AND VENUE:**

3.    The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391, as Plaintiff's claims are substantively based on Title VII and the ADA.

4.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff's claims arising under the PHRA.

5.      All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites to the maintenance of this action.  On April 25, 2019, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission and this action has been filed within ninety (90) days of receipt of said notice.

### III.   PARTIES:

6.      Plaintiff, Maurice Flowers-Williams ("Plaintiff") is a citizen of the Commonwealth of Pennsylvania, residing therein at 2846 Santee Drive, Bethlehem, PA 18017.

7.      Defendant, City of Allentown ("Defendant"), is a state agency duly organized and existing under the laws of the Commonwealth of Pennsylvania, located therein at 425 Hamilton Street, Allentown, PA 18102.

8.      At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of the Defendant.

9.      At all times material herein, the Defendant is and has been a "person" and "employer" as defined under Title VII, the PHRA, and the ADA, and is subject to the provisions of each said act.

10.      At all times relevant hereto, Plaintiff was an "employee" within the meanings of Title VII, PHRA and ADA.

### IV.   STATEMENT OF FACTS:

11.      Plaintiff, a thirty-two (32) year old African-American male, was employed by the Defendant from on or about May 14, 2012, until on or about December 3, 2014, the date of his unlawful and retaliatory termination.

12.     During the course of his employment with Defendant, Plaintiff held the positions of Patrolman and Police Officer. At all times, Plaintiff maintained a satisfactory job performance rating in said capacities.

13.     Throughout Plaintiff's employment with the Defendant, the Defendant through its agents, servants and employees, subjected Plaintiff to a hostile work environment through various instances of discrimination on the basis of his race (African-American). Additionally, Defendant subjected the Plaintiff to retaliation for opposing unlawful discrimination in the workplace.

14.     By way of background, at all times relevant hereto, Plaintiff was one (1) of only five (5) African-American Officers out of approximately 210 Officers employed by Defendant.

15.     By way of further background, Defendant has engaged in a pattern and practice of discriminating against African-American employees. By way of example, prior to the Plaintiff's hire, Defendant promoted Michael Combs ("Combs") to the rank of Captain. During Plaintiff's employment, Combs kept information regarding the Ku Klux Klan on his desk and distributed the same to fellow Caucasian police officers. Furthermore, Combs kept a Ku Klux Klan hood in his office and wore it in the presence of other police officers.

16.     In or around June of 2012, Officer Bill Menasona ("Menasona"), Para Officer, stated to Plaintiff, "I hate to say it, but you know you were hired because you are black." Shortly thereafter, Officer Dean Flyte ("Flyte"), Patrolman, told the Plaintiff that, "You were hired off the minority list, the city had to fill a quota," insinuating that Plaintiff was only hired on the basis of his race (African-American).  Said commentary humiliated Plaintiff, as the same evidenced the discriminatory belief of his Caucasian colleagues that he was unqualified for his position and only received a job offer due to his race.

17.     In or about November of 2013, Officer Thomas Cunningham ("Cunningham"), Patrolman, approached the Plaintiff's patrol car and asked Plaintiff whether he was in the vehicle and asked him to smile in order to see him, stating that all he could see was the "white" of the Plaintiff's eyes, mocking the Plaintiff's complexion. Said racially offensive commentary took place in the presence of Sergeant Robert Judge ("Judge"), a Caucasian superior officer, who failed to reprimand Cunningham for the same.

18.     In or about February of 2014, the Plaintiff attended a meeting with fellow police officers. During said meeting, Lieutenant Weidlman ("Weidlman"), Officer, described an armed robbery that occurred the night before and described the suspect as "Tall, Dark Skin, Slim, Athletic, African-American Male." Immediately thereafter, Mike Good ("Good"), Patrolman, asked the Plaintiff, "Were you in the city last night? Sounds like they are talking about you." Significantly, the remaining officers responded by laughing and mocking Plaintiff. Defendant failed to discipline Good for his derogatory comment.

19.     By way of further discrimination, throughout 2014, Plaintiff submitted applications through Weidlman for several promotions to permanent patrol positions. Instead, Defendant promoted similarly situated, Caucasian officers to said positions. The following, less experienced, less qualified, Caucasian officers received promotions over Plaintiff: Brian Best ("Best"), Robert Bush ("Bush"), and Matt Christenson ("Christenson"). Defendant's continued refusal to consider him for promotion materially and detrimentally affected Plaintiff's morale, self-esteem, and the conditions of his employment, as Defendant continually passed over Plaintiff on the basis of his race.

20.     In or around August of 2014, Plaintiff purchased a new home and showed a picture of it to his supervisors, Sergeant Matthew Vargo ("Vargo") and Sergeant Judge

4

("Judge"), who proceeded to question Plaintiff how he was able to afford such a nice home, thereby insinuating that Plaintiff was of a lower income on the basis of his race. Defendant's discriminatory perception caused Plaintiff to suffer further humiliation and to experience further feelings of isolation in the workplace.

21.     In or around October of 2014, Plaintiff responded to a shooting incident in the evening hours. As the Plaintiff was assessing the scene upon arrival, Cunningham approached him and stated "Reece, open your eyes or turn your flash light back on, all we see is a floating uniform coming towards us," thereby mocking the Plaintiff's race.

22.     By way of further discrimination, Defendant instructed Plaintiff and other officers to engage in racial profiling while on duty. Specifically, Defendant instructed the offices to stop African-American and Hispanic individuals in certain parts of the town, insinuating that those individuals should be presumed to have committed crimes. Defendant's directive caused Plaintiff to experience extreme discomfort, as the same demonstrated Defendant's discriminatory belief that African-American and Hispanic individuals were more likely to commit crimes.

23.     In or about October and November of 2014, Plaintiff met with Joel F. Fitzgerald, Sr. ("Chief Fitzgerald"), Chief of Police, and lodged complaints of race discrimination, as the racially offensive environment was causing Plaintiff emotional distress and humiliation, as well as detrimentally affecting his ability to work for Defendant. However, despite Chief Fitzgerald's knowledge of the discrimination to which Plaintiff was being subjected, he refused to investigate Plaintiff's allegations or take any remedial action.

24.     On or about November 26, 2014, Plaintiff was diagnosed with Attention Deficit Disorder ("ADD"). Said medical condition constitutes a disability within the meanings of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act

("PHRA"), in that it substantially impairs one or more of Plaintiff's major life activities, including, but not limited to, concentrating, communicating, and listening.

25.     Immediately thereafter, Plaintiff apprised his supervisor, Sergeant Timothy Snyder ("Snyder") of his disability and provided medical documentation from his physician. Plaintiff assured Snyder that he was still capable of performing his job duties and requested a reasonable accommodation in the form of attending therapy and taking medication as prescribed by his physician. In response, Snyder told Plaintiff that Defendant was "not willing to work with [Plaintiff]," thereby denying his reasonable accommodation request and failing to engage in the interactive process.

26.     On or about November 29, 2014, Snyder informed the Plaintiff that Defendant was planning to terminate his employment as a result of his disability (ADD) and request for a reasonable accommodation, thereby directly evidencing Defendant's discriminatory motivation. Specifically, Defendant threatened to arrest Plaintiff should he refuse to resign from his position.

27.     On or about December 1, 2014, Snyder informed Plaintiff that Chief Fitzgerald had received Plaintiff's request for reasonable accommodation. Significantly, neither Chief Fitzgerald nor any other supervisory or management-level employee contacted the Plaintiff to discuss the same.

28.     On or about December 3, 2014, Defendant terminated Plaintiff's employment and falsely accused Plaintiff of violating Defendant's policies.

29.     Significantly, Defendant continually allowed leniency to Caucasian Officers who violated the Defendant's policies. Specifically, the Defendant failed to take any disciplinary action against a Caucasian Officer who was arrested for DUI, a Caucasian Officer who provided confidential police information to a civilian, a Caucasian Officer who illegally fabricated

currency, and a Caucasian Officer who became intoxicated and fired his gun into the air at his home.

30.     Thereafter, upon information and belief, Defendant replaced Plaintiff with a non-African-American, non-disabled individual.

31.     Plaintiff believes and avers that the Defendant's articulated reason for the termination of his employment was pretextual in nature and that Defendant terminated his employment on the basis of his race (African-American) and/or his actual and/or perceived disability and/or record of impairment (ADD) and/or in retaliation for opposing unlawful race and/or requesting a reasonable accommodation in connection with his disability.

## COUNT I
### (Title VII – Hostile Work Environment, Race Discrimination)
### Plaintiff v. Defendant

32.     Plaintiff incorporates by reference paragraphs 1 through 31 of his Complaint as though fully set forth herein.

33.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff to a hostile work environment and discrimination on the basis of his race (African-American) constituted a violation of Title VII.

34.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, as aforesaid, Plaintiff sustained permanent and irreparable harm, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

35.     As a further direct result of the aforesaid discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## .COUNT II
### (Title VII – Retaliation)
### Plaintiff v. Defendant

36.     Plaintiff incorporates by reference paragraphs 1 through 35 of his Complaint as though fully set forth herein.

37.     The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff for registering complaints of unlawful race discrimination in the workplace, constituted a violation of Title VII.

38.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff has sustained permanent and irreparable harm, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

39.     As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III
### (PHRA - Hostile Work Environment, Race Discrimination)
### Plaintiff v. Defendant

40.     Plaintiff incorporates by reference paragraphs 1 through 39 of his Complaint as though fully set forth herein.

41.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff to a hostile work environment and discrimination on the basis of his race (African-American), constituted a violation of PHRA.

42.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of PHRA, Plaintiff has sustained permanent and irreparable harm, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

43.     As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**COUNT IV**
**(PHRA - Retaliation)**
**Plaintiff v. Defendant**

44.     Plaintiff incorporates by reference paragraphs 1 through 43 of his Complaint as though fully set forth herein.

45.     The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff for registering complaints of unlawful race discrimination in the workplace, constituted a violation of PHRA.

46.     As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff sustained permanent and irreparable harm, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

9

47.     As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT V
### (ADA – Disability Discrimination, Failure to Accommodate, Failure to Engage in the Interactive Process)
### Plaintiff v. Defendant

48.     Plaintiff incorporates by reference paragraphs 1 through 47 of his Complaint as though fully set forth at length herein.

49.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff to discrimination on the basis of his actual and/or perceived disability and/or record of impairment, failing to provide a reasonable accommodation for his disability, and failing to engage in the interactive process, constituted violations of the ADA.

50.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

51.     As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT VI
### (ADA - Retaliation)
### Plaintiff v. Defendant

52.     Plaintiff incorporates by reference paragraphs 1 through 51 of his Complaint as though fully set forth at length herein.

53.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff to retaliation for requesting a reasonable accommodation for his disability, constituted a violation of the ADA.

54.     As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

55.     As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the ADA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VII
### (PHRA - Disability Discrimination, Failure to Accommodate, Failure to Engage in the Interactive Process)
### Plaintiff v. Defendant

56.     Plaintiff incorporates by reference paragraphs 1 through 55 of his Complaint as though fully set forth at length herein.

57.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff to discrimination on the basis of his actual and/or perceived disability and/or record of impairment, failing to provide a reasonable accommodation for his disability, and failing to engage in the interactive process, constituted violations of the PHRA.

58.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a

11

loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

59.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT VIII
### (PHRA - Retaliation)
### Plaintiff  v. Defendant

60.    Plaintiff incorporates by reference paragraphs 1 through 59 of his Complaint as though fully set forth at length herein.

61.    The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff to retaliation for requesting a reasonable accommodation for his disability, constituted a violation of the PHRA.

62.    As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff sustained permanent and irreparable harm, resulting in his termination from employment, which caused him to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

63.    As a further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

64.    Plaintiff incorporates by reference paragraphs 1 through 63 of his Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against the Defendant, and order that:

a.      Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination and retaliation;

b.      Defendant compensate Plaintiff with an award of front pay, if appropriate;

c.      Defendant pay to Plaintiff punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d.      Defendant pay to Plaintiff pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e.      The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

SIDNEY L. GOLD & ASSOC., P.C.

By:      /s/ Sidney L. Gold, Esquire
         SIDNEY L. GOLD, ESQUIRE
         I.D. No.:  21374
         1835 Market Street, Suite 515
         Philadelphia, PA 19103
         **Attorney for Plaintiff**

DATE:  October 11, 2019

## CERTIFICATE OF SERVICE

I, Sidney L. Gold, Esquire hereby certify that a true and correct copy of the within

Amended Complaint was forwarded to counsel below on this date via email:


Steven E. Hoffman, Esquire
Edward J. Easterly, Esquire
Hoffman Hlavac & Easterly
1605 Cedar Crest Boulevard, Suite 517
Allentown, PA 18104
**Attorneys for Defendant**



**SIDNEY L. GOLD & ASSOCIATES, P.C.**

By:     /s/ Sidney L. Gold, Esquire
        SIDNEY L. GOLD, ESQUIRE
        I.D. No.:  21374
        1835 Market Street, Suite 515
        Philadelphia, PA 19103
        (215) 569-1999
        **Attorneys for Plaintiff**

Dated:  October 11, 2019